[No. 5044.    Decided December 12, 1904.]

CHARLES H. PLASS, *Appellant,* v. W. L. MORGAN, *Defendant,* and L. A. METZGER, *Respondent.*[1]

FRAUDULENT CONVEYANCES—SALES—STOCK OF GOODS IN BULK—STATUTES—CONSTRUCTION.   Pierce's Code, § 5346, regulating the sale of "any stock of goods, wares, or merchandise in bulk," applies to a sale of all the goods, wares, and merchandise of a person engaged in conducting a boarding house and restaurant.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered September 30, 1903, dismissing a writ of garnishment, upon sustaining a demurrer to the controverting affidavit of the garnishee.   Reversed.

*F. S. Blattner,* for appellant.

*F. Campbell,* for respondent.

DUNBAR, J.—Appellant commenced this action to recover a judgment against the defendant, and in such action caused a writ of garnishment to be served on the respondent, who answered that he had no property or effects belonging to the defendant.   The plaintiff controverted said answer by the following affidavit:

[1]Reported in 78 Pac. 784.

"Charles H. Plass, being first duly sworn, on oath deposes and says: That he is not satisfied with the answer of the garnishee herein, and has good reason to believe and does believe that the answer of said garnishee is incorrect in this, that on the —— day of March, 1903, the defendant herein was engaged in the business of conducting a boarding house and restaurant; that on said day the garnishee defendant herein purchased all the goods, wares, and merchandise in bulk of said defendant for cash, and paid the said defendant therefor; that said garnishee defendant, before paying said defendant, did not demand of and receive from said defendant a sworn statement containing the names and addresses of the creditors of said defendant, and did not pay, or see that the purchase money of said property or any part thereof was applied to the payment of, the bona fide claims of the creditors of said defendant; that said stock of goods, wares, and merchandise was at said time fairly and reasonably worth the sum of $600; that at said time affiant was a creditor of said defendant for the sum sued upon herein, the same being on account of goods, wares, and merchandise sold and delivered to said defendant in the conduct of the aforesaid business."

The garnishee defendant demurred to the reply and affidavit of the plaintiff on the following grounds, to wit:

"(1) The said reply and affidavit does not state facts sufficient to controvert the answer of said L. A. Metzger, the garnishee in this case. (2) That it appears upon the face of said affidavit and reply that the law of 1901, applicable to the sale of merchandise in bulk, does not apply in this case."

This demurrer was sustained, the writ of garnishment dismissed, and the garnishee discharged, with judgment for costs. Judgment was entered in favor of the plaintiff, and against the defendant, for the sum of $184. From the judgment of the court sustaining the demurrer and dismissing the garnishment proceeding, this appeal was taken.

So that the only question that is presented is whether or not § 5346, Pierce's Code, applies to a transaction of the kind set forth in the plaintiff's controverting affidavit. The section is as follows:

"It shall be the duty of every person who shall bargain for, or purchase any stock of goods, wares or merchandise in bulk, for cash, or on credit, before paying to the vendor, or his agent, or representative, or delivering to the vendor, or his agent, any part of the purchase price thereof, or any promissory note, or other evidence therefor, to demand of and receive from such vendor, or agent, . . . a written statement, sworn to substantially as hereinafter provided, of the names and addresses of all the creditors of said vendor, to whom said vendor may be indebted, together with the amount of the indebtedness due or owing, and to become due or owing, by said vendor to each of such creditors; and it shall be the duty of said vendor, or agent, to furnish such statement, which shall be verified by an oath . . .".

It is contended by the respondent that the law uses the special term "stock of merchandise," which, according to accepted English definitions, relates to the business of merchandising alone, and was clearly so intended by the legislature; that courts will not so construe the language of the statute as to make it include that which its plain and usual meaning will not import, or render its application absurd or ridiculous in its operation. The learned counsel, however, does not strictly quote the language of the statute. It does not use the special term "stocks of merchandise," but uses the term "any stock of goods, wares or merchandise in bulk." The word "any" is comprehensive and so is the word "stock." There is no limit placed by the legislature on the meaning of the word "stock." A stock of goods may mean, under the plain language of the statute, a great many different kinds of goods, different kinds of wares, or dif-

ferent kinds of merchandise. It was the evident intent of the legislature to prevent the perpetration of fraud upon the creditors of people who are engaged in business, and, while there seems to be no authority submitted on this proposition, and none that we have been able to obtain, we do not see our way clear to exempt the defendant in this case from the liabilities imposed by this statute, or to deprive his creditors of the protection which it seems to guarantee to those who furnish goods to parties engaged in business. Section 5349 throws some light upon what the intention of the legislature was, where it is provided:

"Any sale or transfer of a stock of goods, wares or merchandise out of the usual or ordinary course of business or trade of the vendor, or whenever substantially the entire business or trade therefor conducted by the vendor, shall be sold or conveyed or whenever an interest in or to the business or trade of the vendor is sold or conveyed, or attempted to be sold or conveyed, shall be deemed a sale and transfer in bulk in contemplation of this act."

It seems to us, to give the construction to this statute that was placed upon it by the trial court, would be to limit the effect which was intended by the legislature in the passage of the act.

The judgment will be reversed, with instructions to overrule the demurrer to the controverting affidavit.

FULLERTON, C. J., and HADLEY, ANDERS, and MOUNT, JJ., concur.